1
2
3
4                    UNITED STATES DISTRICT COURT
5                          DISTRICT OF NEVADA
6   JAMES LEON MCCLAIN,                    3:14-cv-00186-RCJ-WGC
7                          Plaintiff,      **REPORT & RECOMMENDATION OF
                                           U.S. MAGISTRATE JUDGE**
8       v.
9   CAROLYN W. COLVIN,
    Acting Commissioner of
10  Social Security Administration,
11                         Defendant.
12          This Report and Recommendation is made to the Honorable Robert C. Jones, United

13  States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to

14  28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff

15  James Leon McClain's Motion for Remand/Reversal. (Docs. # 14 (Notice), # 14-1 (Pl.'s Br.).)[1]

16  The Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's Motion for

17  Remand/Reversal. (Docs. # 15/16.)[2] Plaintiff filed a reply. (Doc. # 17.)

18          After a thorough review, the court recommends that Plaintiff's motion be denied, and that

19  the Commissioner's cross-motion to affirm be granted.

20                                  **I. BACKGROUND**

21          Plaintiff filed his application for Disability Insurance Benefits (DIB) under Title II of the

22  Social Security Act (Act) on October 2, 2012, and on February 26, 2013, protectively applied for

23  Supplemental Security Income (SSI) under Title XVI of the Act. (Administrative Record (AR)

24  172-178, 197-206.) Plaintiff asserted that he became disabled on October 20, 2010, due to

25  migraines, back problems (lumbar spine), shoulder problems, vision impairment, depression, and

26

27  _____

28      [1] Refers to court's docket number.

        [2] These documents are identical.

anxiety (panic disorder). (AR 172, 199, 225-26.) The applications were denied initially and on reconsideration. (AR 108-120.) Plaintiff made a timely request for a hearing before an Administrative Law Judge (ALJ). (AR 122.) On July 29, 2013, Plaintiff appeared, represented by counsel, for a hearing before the ALJ. (AR 34-59.) The ALJ took testimony from Plaintiff and a vocational expert (VE). (*Id.*) On August 19, 2013, the ALJ issued a decision finding Plaintiff not disabled. (AR 17-33.)

Plaintiff appealed (AR 14-16) and the Appeals Council denied review on February 4, 2014. (AR 4-6.) Thus, the ALJ's decision became the final decision of the Commissioner.

Plaintiff now appeals the decision to the district court. (Doc. # 14-1.) First, Plaintiff argues that the ALJ erred in failing to conclude that Plaintiff's mental impairments were severe at step two of her sequential evaluation process. (*Id.* at 9-17.) Second, he asserts that the ALJ erred in ignoring the opinion of his treating physician, Dr. George Mars, that following his back surgery in 2003, he should be limited to sedentary work, which would render him disabled under the regulations. (*Id*. at 17-19.) Finally, Plaintiff contends that the ALJ's determination that Plaintiff was not disabled was based in significant part on her finding that Plaintiff failed to obtain appropriate medical treatment without considering the reason Plaintiff stopped pursuing treatment at some point in 2011 was because he could not pay for treatment and had no insurance. (*Id*. at 20-22.)

Conversely, the Commissioner argues, first, that Plaintiff's contention regarding the ALJ's failure to find his mental impairments severe at step is a moot point, because the ALJ did find Plaintiff had *a* severe impairment (albeit, not associated with his mental impairments), and once that threshold is met, the ALJ is bound to assess Plaintiff's functional abilities based on all relevant evidence in the record, including impairments not found severe at step two. (Doc. # 15 at 3.) As such, the Commissioner contends that the ALJ's finding at step two that Plaintiff's mental impairments were not severe (and rejecting the State consultative examining and reviewing psychological doctors' opinions) is supported by substantial evidence in the record. (*Id*. at 3-7.)

1    Second, the Commissioner takes the position that the ALJ's failure to reference Dr. Mars'

2    opinions was not in error because Dr. Mars' assessment in 2003 that Plaintiff was limited to

3    sedentary work and his certification regarding Plaintiff's inability to walk more than 200 feet in

4    Plaintiff's application for a handicap placard in 2004 are not relevant to Plaintiff's functional

5    abilities with an alleged onset of disability date of October 2010. (*Id*. at 7-9.) Alternatively, if the

6    ALJ erred in failing to mention Dr. Mar's findings, the Commissioner maintains the error was

7    harmless, particularly when examining physician Dr. Pamela K. Corson, who reviewed

8    Plaintiff's records and examined him, opined he was capable of light work with additional

9    restrictions. (*Id*.)

10    Finally, the Commissioner contests Plaintiff's argument that the ALJ based her

11    determination that Plaintiff is not disabled on a failure to obtain appropriate medical treatment or

12    failure to follow prescribed treatment. (*Id*. at 9-12.) Instead, the Commissioner asserts that the

13    ALJ considered many factors in finding Plaintiff not disabled, including his wide range of

14    activities, ability to work after the alleged onset date, conservative treatment modalities used for

15    his back and shoulder pain, and his lack of significant treatment since 2010 was just one of those

16    factors. (*Id*. at 9-10.) With respect to his mental impairments, the Commissioner asserts that the

17    ALJ's discussion of Plaintiff's mental impairments was based on existing treatment records

18    which showed his mental status was within normal limits, and was not based on his inability or

19    failure to seek treatment. (*Id*. at 10-11.)

20    ## II. STANDARD OF REVIEW

21    The court must affirm the ALJ's determination if it is based on proper legal standards and

22    the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec.*

23    *Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is

24    'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

25    reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-

26    24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

27    To determine whether substantial evidence exists, the court must look at the record as a

28    whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*,

1   740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may

2   not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*,

3   759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035

4   (9th Cir. 2007)). "The ALJ is responsible for determining credibility, resolving conflicts in

5   medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d

6   1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or

7   reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner."

8   *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

9   That being said, "a decision supported by substantial evidence will still be set aside if the ALJ

10  did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d

11  1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In

12  addition, the court will "review only the reasons provided by the ALJ in the disability

13  determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*,

14  759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

15                                       **III. DISCUSSION**

16  **A. Five-Step Sequential Process**

17          Under the Social Security Act, "disability" is the inability to engage "in any substantial

18  gainful activity by reason of any medically determinable physical or mental impairment which

19  can be expected to result in death or which has lasted or can be expected to last for a continuous

20  period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined

21  to be under a disability only if his physical or mental impairment or impairments are of such

22  severity that he is not only unable to do his previous work but cannot, considering his age,

23  education, and work experience, engage in any other kind of substantial gainful work which

24  exists in the national economy, regardless of whether such work exists in the immediate area in

25  which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if

26  he applied for work." 42 U.S.C. § 1382c(a)(3)(b).

27          The Commissioner has established a five-step sequential process for determining whether

28  a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S.

137, 140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. 20 C.F.R. §  404.1520(a)(4) and §  416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). "'The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five.'" *Garrison*, 759 F.3d at 1011 (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)).

In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §  404.1520(a)(4)(i), (b); §  416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or a combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" which include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

20 C.F.R. §  404.1521 and §  416.921. If a claimant's impairment is so slight that it causes no more than minimal functional limitations, the Commissioner will find that the claimant is not disabled. 20 C.F.R.§  404.1520(a)(4)(ii), (c) and 416.920(a)(ii). If, however, the Commissioner finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id*.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and §  416.920(a)(4)(iii), (c). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. §  404.1525(a). If the claimant's impairment meets or equals one of

the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. §  404.1520(a)(4)(iii), (d), §  416.920(d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(b)(1).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform work available in the

1  national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-

2  42, 144. This means "work which exists in significant numbers either in the region where such

3  individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant

4  cannot do the work he or she did in the past, the Commissioner must consider the claimant's

5  RFC, age, education, and past work experience to determine whether the claimant can do other

6  work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the

7  testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094,

8  1100 (9th Cir. 1999).[3]

9       If at step five the Commissioner establishes that the claimant can do other work which

10  exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely,

11  if the Commissioner determines the claimant unable to adjust to any other work, the claimant

12  will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071;

13  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

14  **B. ALJ's Findings in this Case**

15       In the present case, the ALJ applied the five-step sequential evaluation process and

16  found, at step one, that Plaintiff had not engaged in substantial gainful activity since his alleged

17  onset date of October 20, 2010. (AR 22.)

18       At step two, the ALJ found it was established Plaintiff suffered from the following severe

19  impairments: degenerative disc disease of the lumbar spine and degenerative change of the right

20  acromioclavicular joint. (AR 22.) Additionally, she found that Plaintiff's depression and anxiety

21  were non-severe mental impairments. (AR 23.) While the record reflects that Plaintiff was

22  diagnosed with these mental impairments, the ALJ stated that the evidence did not indicate that

23  [3] "The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work
24  experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in
   significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th
25  Cir. 2010) (internal quotation marks and citation omitted). The Grids place jobs into categories by their physical-
   exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and
   medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the
26  numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id.* Each grid
   has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age,
27  education and work experience. *Id.* For each combination of factors, the Grids direct a finding of disabled or not
   disabled based on the number of jobs in the national economy in that category. *Id.*
28

they imposed more than a minimal degree of limitation on Plaintiff's daily activities, social functioning, or ability to maintain concentration, persistence or pace. (AR 23.) The ALJ noted that Plaintiff reported he did not treat with mental health medication, counseling or therapy; he is able to prepare meals, go to church, socialize with friends and family, and use public transportation; he consistently exhibited a calm and stable mood with congruent affect on examination; and in November 2011, he reported he only had a little anxiety and depression. (AR 23.)

In January 2013, Dr. Anthony Edwards performed a consultative psychological evaluation of Plaintiff; his mood was variable and unstable and Dr. Edwards opined Plaintiff had moderate to marked deficits in following multiple-step tasks and instructions. (AR 23.) In addition, in February 2013, State agency consultants opined Plaintiff could maintain superficially appropriate interaction with coworkers and supervisors but would be best suited to work in a setting involving limited contact with the general public. (AR 23.) The ALJ gave "little weight" to Dr. Edwards' and the State agency psychological consultants' opinions because she found their restrictions were excessive in light of the objective medical evidence including the calm and stable mood with congruent affect consistently exhibited by Plaintiff throughout the treatment records. (AR 23.)

At step three, the ALJ concluded Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one of the Listed Impairments. (AR 23.)

At step four, the ALJ found Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except: he can only occasionally perform postural activities; is unable to perform repetitive overhead right upper extremity reaching; should avoid extreme cold and vibrations; and should avoid hazards such as working at heights or operating dangerous moving machinery. (AR 24.)

The ALJ commented that the very limited objective medical evidence fails to provide strong support for Plaintiff's allegations of disabling symptoms and limitations. (AR 25.) She noted that while he had lumbar surgery in 2003, he only treated for low back pain on one occasion in January 2013 after the alleged onset date of October 20, 2010. (AR 25.) Despite his

reports of chronic low back and right shoulder pain, he exhibited no weakness, numbness, swelling as well as normal range of motion and strength on examination. (AR 25.) In January 2011, he reported to his mental health examiner that he was able to walk several miles a day. (AR 25.) In July 2011, he reported he was able to work on a friend's truck. (AR 25.) Objective diagnostic imaging studies in January 2013 showed only mild degenerative changes of the right shoulder joint, and lower lumbar spondylosis with only mild atherosclerosis, and moderate degenerative disc disease at L4-L5. (AR 25.) Plaintiff underwent a consultative physical examination with Dr. Pamela Corson in January 2013, and exhibited full strength, normal gait and normal senses. (AR 25.) In February 2013 and March 2013, State agency medical consultant restricted Plaintiff to light exertional work. (AR 25.)

In light of his RFC, the ALJ concluded Plaintiff was unable to perform any past relevant work. (AR 26.)

At step five, the ALJ considered Plaintiff's age (51 years, defined as closely approaching advanced age on his alleged onset date), his high school education and ability to communicate in English, his work experience and RFC, as well as testimony from a VE to determine Plaintiff could perform jobs that exist in significant numbers in the national economy, including: fast food worker (DOT 311.472-010); hand packager (DOT 559.687-074); and office helper (DOT 239.567-010). (AR 26-27.) As a result, the ALJ concluded Plaintiff was not disabled as of his alleged onset date of October 20, 2010, through the date of her decision. (AR 27.)

**C. ALJ's Finding at Step Two that Plaintiff's Mental Impairments are Not Severe**

Plaintiff first contends that the ALJ erred in failing to find that Plaintiff's mental impairments were severe at step two of the sequential analysis.

As noted above, a social security claimant must have a severe impairment (or combination of impairments) that significantly limits the physical or mental ability to do basic work activities, or they are found not disabled. *See* 20 C.F.R. § § 404.1520(c), 416,920(c). If the ALJ finds the claimant has an impairment(s) that is severe, the ALJ will proceed to step three. An impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities, which are defined as the abilities and aptitudes to do most

1   jobs, such as: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or

2   handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering

3   simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers

4   and usual work situations; and (6) dealing with changes in a routine work setting. *See* 20 C.F.R.

5   § § 404.1521, 416.921. The claimant must prove the physical or mental impairment by providing

6   medical evidence consisting of signs, symptoms and laboratory findings; the claimant's own

7   statement of symptoms alone will not suffice. *See* 20 C.F.R. § § 404.1508, 416.908.

8          "A determination that an impairment(s) is not severe requires a careful evaluation of the

9   medical findings which describe the impairment(s) and an informed judgment about its limiting

10   effects on the individual's physical or mental ability(ies) to perform basic work activities; thus,

11   an assessment of function is inherent in the medical evaluation process itself." SSR 85-28, 1985

12   WL 56856, at * 4 (1985). "An impairment or combination of impairments may be found 'not

13   severe *only if* the evidence establishes a slight abnormality that has no more than a minimal

14   effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)

15   (quoting *Smolen*, 80 F.3d at 1290) (emphasis original in *Webb*); *see also* SSR 85-28, 1985 WL

16   56856, at * 3 (1985).  The step two inquiry is "a 'de minimis screening device [used] to dispose

17   of groundless claims,' ... and an ALJ may find that a claimant lacks a medically severe

18   impairment or combination of impairments only when his conclusion is 'clearly established by

19   medical evidence.'" *Webb*, 433 F.3d at 687 (quoting *Smolen*, 80 F.3d at 1290).

20          In addition, the ALJ is required to consider all relevant evidence, including medically

21   determinable impairments not found to be severe at step two, in conducting the RFC assessment

22   at step four. *See* 20 C.F.R. § § 404.1545(a)(2), 41.945(a)(2). Plaintiff at least implicitly argues

23   that the ALJ erred in failing to consider Plaintiff's mental impairments in connection with the

24   RFC assessment when she rejected the opinions of the State agency examining doctor and State

25   agency consulting psychologist regarding Plaintiff's mental limitations, finding that they were

26   contradicted by the objective mental health evidence in the record.

27          Therefore, at step two the court's inquiry concerning Plaintiff's mental impairments is

28   whether the "ALJ had substantial evidence to find that the medical evidence clearly established

1  that [Plaintiff] did not have a medically severe impairment or combination of impairments."

2  *Webb*, 433 F.3d at 687 (citing *Yuckert*, 841 F.2d at 306). At step four, the court's inquiry is

3  similar: whether the ALJ's decision not to consider Plaintiff's mental impairments (and

4  therefore, in rejecting the psychological consultant's opinions concerning Plaintiff's mental

5  impairments) is supported by substantial evidence in the record.

6        In evaluating medical opinions, the court "'distinguish[es] among the opinions of three

7  types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine

8  but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat

9  the claimant (nonexamining physicians).'" *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th

10  Cir. 1995)). Treating physicians' opinions are generally given more weight than examining or

11  non-examining physicians. *Id*. In addition, "the opinion of an examining physician is entitled to

12  greater weight than that of a non-examining physician." *Id*. (citing *Ryan*, 528 F.3d at 1198). "The

13  weight afforded a non-examining physician's testimony depends on the degree to which [he or

14  she] provide[s] supporting explanations for [his or her] opinions." *Id*. (internal quotation marks

15  omitted). When an examining doctor's opinion is contradicted, the ALJ may reject it by

16  providing specific and legitimate reasons that are supported by substantial evidence in the record.

17  *Garrison*, 759 F.3d at 1012 (quoting *Ryan*, 528 F.3d at 1198).

18        Accordingly, the court will now review the ALJ's findings and the evidence in the record

19  regarding Plaintiff's mental impairments to determine whether or not the ALJ erred in finding

20  Plaintiff's mental impairments not severe at step two (and in consequently not taking them into

21  account at step four), and in rejecting the opinions of Dr. Anthony Edwards and the State agency

22  psychological consultant in the process.

23        As indicated above, the ALJ acknowledged Plaintiff was diagnosed with depression and

24  anxiety, but concluded that the evidence did not indicate his mental impairments imposed more

25  than a minimal degree of limitation on his daily activities, social functioning or ability to

26  maintain concentration, persistence or pace. (AR 23.) She noted that Plaintiff was able to prepare

27  meals, go to church, socialize with friends and family and use public transportation; on

28  examination he consistently exhibited a calm and stable mood with congruent affect; and in

1    November 2011, he reported he had only a little anxiety and depression. (AR 23.) The ALJ

2    rejected the opinions of consultative psychological examiner Dr. Edwards and the reviewing

3    State agency psychological consultants. (AR 23.) Dr. Edwards described Plaintiff's mood as

4    variable and unstable, and opined Plaintiff had moderate to marked deficits in following multi-

5    step tasks and instructions, and the reviewing consultants opined Plaintiff could maintain

6    superficially appropriate interaction with coworkers and supervisors but would be best suited in

7    work involving limited contact with the general public. (AR 23.) The ALJ found these

8    restrictions were excessive in light of objective medical evidence, including the records that

9    consistently described Plaintiff as having a stable mood and congruent affect. (AR 23.)

10       Plaintiff went to Churchill Community Hospital on December 28, 2004, complaining he

11   was seeing and hearing things. (AR 481.) He was referred to mental health. (AR 482.) He

12   reported depression for two to three months with rapid mood swings. (AR 484.) He had told his

13   family that he wanted to get a gun and kill the people that were following him. (AR 484, 489.)

14   He indicated that following his back surgery two years prior he had gradually become more

15   negative as he became aware of his physical limitations and felt useless, depressed, moody and

16   irritable. (AR 492.) He relayed that he had been hearing things and saw a little girl who visited

17   him as well as other people following him. (AR 492-93.) His blood screen was positive for

18   marijuana and methamphetamine. (AR 492.)

19       Plaintiff's next mental health record is dated December 7, 2010. (AR 331.) At that time,

20   he reported anger and depression, evidenced by increased feelings of worthlessness and an

21   inability to sleep through the night. (AR 331.) He indicated that his depression began after his

22   work-related injury that ended with back surgery. (AR 331.) He was taking Zoloft. (AR 331.) He

23   had no suicidal or homicidal ideations. (AR 331.) His affect was "appropriate," and his mood

24   "anxious" and he was "restless and fidgety." (AR 332.) He was cooperative, but had "bizarre"

25   thought content. (AR 332.) His insight and judgment were described as poor with pressured

26   speech. (AR 332.) He was diagnosed with depression.  He had a GAF score of 50. (AR 333.) The

27   clinician indicated that Plaintiff appeared to need a medication assessment and could benefit

28   from individual therapy to address issues of anger management and self-esteem. (AR 333.)

1    Plaintiff was then seen at Nevada Division of Mental Health and Developmental Services

2    on January 14, 2011. (AR 317.)  He was on time, clean and neatly dressed, with good eye contact

3    and good thought process. (AR 317.) His speech was regular. (AR 317.) He reported more mood

4    swings in the past years and indicated Zoloft was no longer working. (AR 317.) He reported that

5    his back pain was rated at a six on a scale of one to ten and he was walking several miles a day.

6    (AR 317.) He was advised to follow up as needed. (AR 317.)

7    Plaintiff underwent a psychiatric evaluation on January 28, 2011. (AR 314-15.) He

8    relayed that he lost his job after a verbal outburst in October 2010, and got divorced in December

9    2010. (AR 314.) He was suspicious his wife was having an affair with a co-worker. (AR 314.)

10   He was diagnosed with depression in 2003 following a back injury in 2001.  (AR 314.) He was

11   described as calm with a congruent mood and affect. (AR 314.) He denied suicidal or homicidal

12   ideation, and there were no psychosis or manic symptoms (AR 315.) He was alert and oriented,

13   his memory was good, and his judgment/insight/impulse control appeared intact. (AR 315.) He

14   reported a good relationship with his two biological children. (AR 315.) His principal diagnosis

15   was mood disorder. (AR 315.) He was taking Zoloft, which he reported helped, but not as much

16   as when he first started it, but he tolerated it well. (AR 315.) His Zoloft dose was increased. (AR

17   317.)

18   Plaintiff was seen on March 25, 2011 at a mental health clinic in Fallon, and reported

19   having to stop his job as a prep cook because it required too much lifting. (AR 317.) He was

20   living with his son and granddaughter, with whom he had a good relationship. (AR 317.) He

21   reported a long history of insomnia, and stated he had been off Zoloft for a week and a half as he

22   had some difficulty getting the medication. (AR 317.) He was described as alert and oriented

23   with normal speech, and was calm with a congruent mood and affect. (AR 317.) He denied a

24   plan to harm himself or others, and there were no symptoms of psychosis. (AR 317.) Zoloft was

25   discontinued and he was started on Prozac as well as Trazodone for the insomnia. (AR 317.) He

26   was advised to return to the clinic in three weeks. (AR 317.)

27   Plaintiff was seen on April 13, 2011, and was clean and dressed neatly, with good eye

28   contact, and logical and organized thoughts. (AR 318.) He tried joking during the assessments

- 13 -

1    and had appropriate smiles. (AR 318.) He denied suicidal or homicidal ideations, and denied

2    hallucinations. (AR 318.) He reported he was medication compliant but still had trouble sleeping

3    at night. (AR 318.) He was encouraged to discuss this with his physician and to get an increase in

4    his Trazadone prescription for better sleep. (AR 318.) He reported that his lumbar spine pain was

5    a seven on a scale of one to ten, and Vicodin was not available so he was taking only Tylenol for

6    his pain which did not relieve his discomfort. (AR 318.)  He was given contact information for

7    pain management. (AR 318.)

8            Plaintiff's depression diagnosis was noted on April 15, 2011. (AR 318.) He reported that

9    he was still looking for work, was living with his son and granddaughter, and helped with

10   cooking and cleaning. (AR 318.) He said the Trazadone helped his sleep a little. (AR 318.) He

11   was alert, oriented, with normal speech. (AR 318.) He was calm with a congruent affect, and

12   denied suicidal or homicidal ideations, and no delusions. (AR 318.) He was advised to try two

13   tabs of Trazadone and was told to follow up with his therapist and continue on Prozac. (AR 318.)

14           Plaintiff was seen on May 13, 2011, and reported that his neighbor gave him a hard time

15   this week, but he handled it well. (AR 318.) He reported that he was doing well, had gone to a

16   job fair and spent time with his grandkids. (AR 318.) He was alert, oriented with normal speech,

17   and appeared calm with a congruent mood and affect. (AR 318.) He denied any plans to harm

18   himself or others, and there were no symptoms of psychosis. (AR 318.) He was prescribed

19   Trazodone and Prozac, which he appeared to be tolerating well, and was advised to follow up

20   with his therapist. (AR 318.)

21           On June 16, 2011, Plaintiff reported doing well, and that his mood was well. (AR 319.)

22   He only complained of back pain. (AR 319.) He had visited with a friend the day before, enjoyed

23   movies, went home and cooked his meal. (AR 319.) He was alert and oriented, and appeared

24   calm with a congruent mood and affect. (AR 319.) He was to continue on Prozac and Trazadone

25   and to follow up with his therapist. (AR 319.)

26           On July 29, 2011, Plaintiff reported: "I feel fine." (AR 319.) He took his two

27   granddaughters to the park the day before and had a good time. (AR 319.) He enjoyed watching

28   television and also helped a friend work on his truck the day before. (AR 319.) His mood was

1   described as stable with no new complaints. (AR 319.) He was alert and oriented, was calm with

2   a congruent mood and affect, and appeared to tolerate his medications well. (AR 319.) He was

3   continued on the medications and was advised to follow up with his therapist. (AR 319.)

4          On September 9, 2011, Plaintiff reported that his mother-in-law passed away that day of

5   cancer. (AR 319.) He had been divorced in December 2010, but always cared for his mother-in-

6   law. (AR 319.) He reported that he had supportive friends and family, and planned to discuss this

7   with his therapist. (AR 319.) He was alert and oriented, and was calm with a congruent mood

8   and affect. (AR 319.) He expressed hope for the future. (AR 319.) He was continued on his

9   medications. (AR 319.)

10         On September 30, 2011, he stated he was "coping pretty well" after his mother-in-law's

11  death. (AR 320.) He thought about her daily, but said she is no longer in pain and is in a better

12  place. (AR 320.) It was noted that Plaintiff had support from his son and family, and his therapist

13  also felt he was coping well. (AR 320.) He had no new complaints. (AR 320.) He was alert and

14  oriented, and was calm with a congruent mood and affect. (AR 320.) He was to continue on his

15  medications. (AR 320.)

16         On November 4, 2011, Plaintiff appeared calm and cooperative to staff, and reported his

17  medications were effective. (AR 320.) He reported "a little" anxiety and depression, but denied

18  suicidal or homicidal ideation or psychosis. (AR 320.) He further reported that he felt stable, that

19  he was able to stay calm on a daily basis and did not get angry easily. (AR 320.) He felt his

20  medications were working well, his family was supportive and he was enjoying his

21  grandchildren. (AR 320.) He appeared calm with a congruent mood and affect, and was advised

22  to continue on his medications. (AR 320.)

23         At a January 5, 2013 emergency room visit, he was described as cooperative with an

24  appropriate mood and affect. (AR 344.)

25         Plaintiff underwent a psychological evaluation with Dr. Edwards on January 28, 2013.

26  (AR 391-95.) Dr. Edwards described Plaintiff as appearing exceptionally anxious and had

27  warned Dr. Edwards soon after his arrival that he easily loses his temper. (AR 391.) When he

28  was asked to describe his current problems or conditions that affect his ability to do work, he

1    reported he does not do well under stress and sometimes gets mad easily; he does not do well

2    with new things and has a hard time saying how he feels; and does not sleep well. (AR 391.) He

3    reported counseling for mental health problems at Fallon Mental Health Clinic from 2003

4    through 2010 for depression, and reported his depression is usually a six on a scale of one to ten,

5    with his anxiety at a level eight. (AR 391.) He was not then taking any prescription medications

6    because he had no funds and no insurance. (AR 391.) He reported he could not work due to the

7    pain in his lower back, arms, shoulder, legs and feet. (AR 392.)

8           On examination, Dr. Edwards described Plaintiff as "very stiff" and "quite anxious." (AR

9    392.) He was adequately dressed and sufficiently groomed. (AR 392.) His mood was "variable

10   and unstable." (AR 392.) He was very suspicious and uncomfortable with the examiner. (AR

11   392.) His affect was "restricted." (AR 392.) His interaction style was "hostile."  His word

12   pronunciation was "mumbled." (AR 392.) He denied hallucinations. (AR 392.) He denied

13   suicidal or homicidal ideations. (AR 392.) He reported that he was depressed every day, had lost

14   energy, a decreased appetite and trouble sleeping. (AR 392.) He reported difficulty

15   concentrating, excessive anxiety and panic attacks. (AR 392.) He was able to maintain

16   concentration and attention sufficient to carry out one- and two-step tasks and instructions. (AR

17   393.) He reported waking up, having coffee, eating meals, watching television, playing on the

18   computer and bathing. (AR 393.) He participated in occasional outings with friends and family,

19   occasionally attended church. (AR 393.) He visited with family and used the phone to call

20   friends, family and businesses. (AR 393.) He watched television and listened to music, cooked

21   and did dishes; went shopping with his fiancé, made a shopping list; handled money; bathed and

22   dressed himself; and could usually remember what he reads and watches on television. (AR 393.)

23          Dr. Edwards assessed Plaintiff as being able to understand, remember and carry out

24   detailed and simple but not complex instructions. He was oriented, and had some cognitive

25   deficits but they were moderate to mild. (AR 394.) Dr. Edwards concluded that based on the

26   "brief examination, MSE and clinical evaluation and self-reports," Plaintiff would have difficulty

27   with appropriate interactions with supervisors, co-workers, and the general public. (AR 394.) He

28   was assessed with a GAF of 35. (AR 394.) Dr. Edwards stated that Plaintiff's prognosis was poor

1   and he was unable to receive mental health counseling or psychiatric medication monitoring

2   which would help him. (AR 395.)

3          A State agency consultant assessed Plaintiff in February 2013 as having mild restrictions

4   in activities of daily living, moderate difficulties in maintaining social functioning, and mild

5   difficulties in maintaining concentration, persistence or pace. (AR 75.) The consultant noted

6   there were no significant limitations attributable to mental factors. (AR 75, 76.) The consultant

7   went along with Dr. Edwards' conclusion that Plaintiff could carry out one and two-step tasks,

8   but would have some problems with interactions at work. (AR 75.) The consultant opined

9   Plaintiff was moderately limited in his ability to interact appropriately with the general public;

10  moderately limited in his ability to accept instructions and respond appropriately to criticism

11  from supervisors; and moderately limited in his ability to get along with coworkers or peers

12  without distracting them or exhibiting behavioral extremes. (AR 79.) Finally, the consultant

13  assessed that Plaintiff is capable of maintaining superficially appropriate interactions with

14  coworkers and supervisors and would be best suited to work in a setting that involved limited

15  contact with the general public. (AR 79.) In light of these findings, the consultant still concluded

16  that Plaintiff was not disabled. (AR 81.)

17         At the hearing before the ALJ, Plaintiff testified that the effect his depression and anxiety

18  have on him depends upon his stress levels. (AR 52.)  Sometimes he finds it hard to get out of

19  bed, and this occurs approximately ten to twelve days a month. (AR 52.) He had not taken

20  anything for his condition in a couple of years, and did not attend counseling. (AR 53.)

21         In assessing Plaintiff's ability to perform work, the ALJ did not pose any mental

22  limitations to the VE. (AR 55.)

23         The court finds that the ALJ's decision to find Plaintiff's mental impairments not severe

24  at step two is supported by substantial evidence in the record, and that the ALJ set forth specific

25  and legitimate reasons for rejecting the opinions of Dr. Edwards and the State agency consultant

26  that are likewise supported by substantial evidence in the record. These issues are tied together in

27  that the ALJ's determination that Plaintiff's mental impairments were not severe was based on

28

1    her rejection of these opinions on the basis that they were not supported by Plaintiff's mental

2    health treatment records.

3            The ALJ correctly points out that the opinions of the consultative physicians are simply

4    not supported by the objective evidence in the record. While Plaintiff reported serious mental

5    health complaints in 2004 and then in 2010, there are no other treatment records during this time

6    period to indicate what the state of Plaintiff's mental health was or the what impact it was having

7    on his ability to function.  His provider determined in 2010 that he would benefit from

8    medication and individual therapy, and the treatment records from 2010 to 2011 consistently

9    support the ALJ's conclusion that Plaintiff's mental impairments were not severe, *i.e.*, were

10   having no more than a minimal effect on his functional abilities.

11           As the ALJ noted, the treatment records consistently describe Plaintiff as having a good

12   thought process, as being calm with a congruent mood and affect with no symptoms of

13   psychosis. His memory was always described as good, with intact judgment and insight. His

14   medication was managed which allowed his mental health symptoms to improve to stability and

15   aided his sleep. He was described as cooperative and acting appropriately. He went to job fairs

16   and described himself as doing well, and as enjoying activities and interactions with his family

17   and friends. He coped well with a tragic incident of losing someone close to him. In November

18   2011, he said he had a "little" anxiety, but also described himself as calm and as not angering

19   easily. These treatment records contain absolutely zero support for the conclusions of

20   Dr. Edwards, who described his own interaction with Plaintiff as "brief." The State agency

21   consultant have even less support as those conclusions were based only a records review and an

22   otherwise unexplained endorsement of Dr. Edwards' opinions. It is notable that even when

23   adopting Dr. Edwards' opinions regarding Plaintiff's ability to interact with supervisors, the

24   State agency consultant still determined Plaintiff was not disabled.

25           In sum, the court finds that the ALJ's determinations regarding Plaintiff's mental

26   impairments are supported by substantial evidence in the record and recommends affirming the

27   ALJ on this basis, and denying Plaintiff's motion on this point.

28

1    The court will now address Plaintiff's contention that mental health notes from Plaintiff's

2    therapist at Fallon Mental Health are missing from the record and that the court should remand

3    the case because the ALJ failed to fully develop the record. (Doc. # 14-1 at 16-17.) The

4    Commissioner contends that the ALJ did fully develop the record, and points out that Plaintiff's

5    attorney never pointed out any deficiencies in the record at the hearing, did not ask the ALJ to

6    request additional evidence, or ask the ALJ to hold the record open to submit additional

7    evidence. (Doc. # 15 at 6.)

8         Plaintiff asserts that the ALJ failed to fully develop the record as treatment notes from

9    Plaintiff's therapist are missing. It is undisputed that the agency sought all records from Fallon

10   Mental Health. As the Commissioner points out, Plaintiff does not indicate that he made the ALJ

11   aware that the record was deficient at the hearing. He did not ask the ALJ to hold the record open

12   to submit this evidence. He did not seek to submit additional evidence in the appeals process.

13   Nor does Plaintiff address whether these missing treatment records support his position that he

14   suffered from severe mental impairments. Instead, Plaintiff asks the court to reverse the ALJ's

15   decision on the basis that the ALJ did not review some records the ALJ was not made aware

16   existed. It is true that the ALJ "has an independent duty to fulfill and fairly develop the record

17   and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144,

18   1150 (9th Cir. 2001) (internal citations and quotation marks omitted). "Ambiguous evidence, or

19   the ALJ's own finding that the record is inadequate to allow for proper evaluation of the

20   evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Id*. (citations and quotation

21   marks omitted).

22        The court does not find the ALJ abrogated her duty to develop the record under these

23   circumstances. The ALJ requested the records from Fallon Mental Health. Plaintiff, who is

24   represented by counsel, failed to apprise the ALJ that any records were missing throughout the

25   process. Moreover, a court may remand to the ALJ for consideration of new evidence when new

26   evidence is "material" and new evidence is "material" "only where there is a reasonable

27   possibility that the new evidence would have changed the outcome of the ... determination had it

28   been before [the ALJ]." *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir.

1   1984) (quotation marks and citation omitted); *see also* 42 U.S.C. § 405(g). Here, there is no

2   indication by Plaintiff that this missing evidence would have changed the outcome of his case

3   had it been before the ALJ. Therefore, there is no basis to remand to the ALJ based on this

4   assertion that certain records are missing.

5   **D. ALJ's Failure to Acknowledge Dr. Mars' Opinions**

6       Next, Plaintiff argues that the ALJ erred in failing to acknowledge: (1) that Dr. Mars

7   deemed Plaintiff was limited to sedentary work on December 1, 2003 (following Plaintiff's July

8   2003 back surgery); and (2) in June 2004, Dr. Mars indicated on a handicap placard application

9   that Plaintiff was permanently disabled in his inability to walk.

10      On December 1, 2003, Dr. Mars indicated that Plaintiff was able to return to work

11  effective December 9, 2003 at a sedentary level. (AR 594.) He further indicated Plaintiff could

12  occasionally sit, walk, stand, bend at the hips, climb stairs, and repetitively use his hands, except

13  that he could never stoop or reach above his head. (AR 594.) He was limited to occasionally

14  lifting up to ten pounds up to between the knees and chest, and carrying up to ten pounds for up

15  to five feet. (AR 594.) Plaintiff was restricted in not being able to squat to the floor, and was to

16  limit forward and lateral full arm reaching to occasional during hand use. (AR 594.)

17      Then on June 7, 2004, Dr. Mars signed Plaintiff's application for a disabled person's

18  license plate and/or placard, indicating Plaintiff could not walk 200 feet without stopping to rest,

19  and stating that the condition is irreversible, that Plaintiff is permanently disabled in his ability to

20  walk. (AR 221.)

21      The ALJ did not comment on Dr. Mar's restriction of Plaintiff to sedentary work on

22  December 1, 2003, or the June 7, 2004 handicap placard application. The Social Security

23  Regulations provide that in determining disability, the agency "will always consider the medical

24  opinions in your case record together with the rest of the relevant evidence" received, and

25  "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R.

26  § 404.1527(b), (c); *see also Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008) ("The

27  ALJ must consider all medical opinion evidence."). The ALJ erred in failing to acknowledge

28  Dr. Mar's assessments of Plaintiff; that was in error. "Because a court must give 'specific and

1    legitimate reasons' for rejecting a treating doctor's opinions, it follows even more strongly that

2    an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even

3    mentioning them." *Marsh v. Colvin*, --- F.3d ---, 2015 WL 4153858, at * 2 (9th Cir. July 10,

4    2015).

5            The court must now consider whether that error is harmless, as the Commissioner argues.

6    The Ninth Circuit recently confronted this issue in *Marsh v. Colvin. Marsh,* 2015 WL 4153858,

7    at * 1-3.  The Ninth Circuit confirmed that harmless error analysis is applied in social security

8    cases, and applied the harmless error analysis in *Marsh* "to assess the impact of the ALJ's failure

9    to event mention Dr. Betat or his SOAP notes, let alone its failure to give 'specific and legitimate

10   reasons that are supported by substantial evidence' for rejecting a treating source's medical

11   opinion." *Marsh*, 2015 WL 4153858, at * 1 (citing *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th

12   Cir. 2014)). In other words, harmless error analysis can be applied even in a case where an ALJ

13   wholly fails to mention the opinion of a treating doctor. *Id*. at * 2, 3. "ALJ errors in social

14   security cases are harmless if they are 'inconsequential to the ultimate nondisability

15   determination' and ... 'a reviewing court cannot consider [an] error harmless unless it can

16   confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have

17   reached a different disability determination.'" *Id*. (quoting *Stout v. Comm'r, Soc. Sec. Admin.*,

18   454 F.3d 1050, 1055-56 (9th Cir. 2006)).

19           [W]here the circumstances of the case show a substantial likelihood of prejudice,
             remand is appropriate so that the agency can decide whether re-consideration is
20           necessary. By contrast, where harmlessness is clear and not a borderline question,
             remand for reconsideration is not appropriate.

21   *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). "[T]he more serious the ALJ's error, the

22   more difficult it should be to show the error was harmless." *Marsh*, 2015 WL 4153858, at * 3.

23           Here, unlike the Ninth Circuit in *Marsh*, the court can confidently conclude that the

24   ALJ's error in not mentioning Dr. Mars' assessments is harmless.

25           In *Marsh*, unlike this case, the record contained progress notes from the claimant's

26   physician for a period of approximately three years, including a clinical progress note stating that

27   the claimant was "pretty much nonfunctional" and appeared to be disabled. *Marsh*, 2015 WL

28   4153858, at * 1. Here, the record only contains a single page where Dr. Mars restricted Plaintiff

1    to sedentary work upon his return to work following back surgery on December 1, 2003, and a

2    certification in a June 7, 2004 handicap placard application that Plaintiff could not walk 200 feet

3    without stopping to rest. As the Commissioner points out, these assessments were made in 2003

4    and 2004, *six and seven years* prior to Plaintiff's alleged onset date. Moreover, Dr. Mars'

5    assessment is not accompanied by *any* treatment or clinical progress notes that would support a

6    finding that the restriction to sedentary work after Plaintiff's back surgery should have remained

7    with Plaintiff through his alleged onset date. Instead, the medical evidence demonstrates

8    otherwise.

9          As indicated above, the "ALJ is not bound by an expert medical opinion on the ultimate

10   question of disability, [but] she must provide 'specific and legitimate' reasons for rejecting the

11   opinion of a treating physician." *Tommasetti*, 533 F.3d at 1041 (citation omitted). "The ALJ can

12   meet this burden by setting out a detailed and thorough summary of the facts and conflicting

13   clinical evidence, stating [her] interpretation thereof, and making findings." *Id*. (citation

14   omitted). An ALJ must similarly provide specific, legitimate reasons based on substantial

15   evidence in the record for rejecting a treating physician's opinion that is contradicted by another

16   doctor. *See Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 692 (9th Cir. 2009).

17         Here, the ALJ did in fact provide specific and legitimate reasons for finding Plaintiff not

18   disabled, and properly, even if implicitly, rejected a restriction to sedentary work. The ALJ noted

19   that Plaintiff had back surgery in 2003, but only treated for low back pain on one occasion after

20   his alleged onset date in October 2010. (AR 25.) The ALJ pointed out that despite his reports of

21   chronic pain, Plaintiff exhibited no weakness, no numbness, a normal range of motion, normal

22   strength and no swelling. (AR 25.) In January 2011, he reported to his mental health counselor

23   that he was able to walk several miles a day which directly contradicts any claim that he should

24   be limited to sedentary work. (AR 25.) In July 2011, he was able to work on his friend's truck.

25   (AR 25.) The ALJ next pointed out that objective diagnostic imaging studies only revealed mild

26   to moderate degenerative changes and did not support Plaintiff's claim of debilitating injury.

27   (AR 25.)  The ALJ then reviewed the findings of State agency examining consultant, Dr. Pamela

28   Corson. (AR 25.) On examination, Plaintiff exhibited full grip strength, a normal gait, full upper

1    extremity strength and normal sensory exam. (AR 25.) Dr. Corson opined Plaintiff could stand

2    for two hours in an eight hour day, and sit for six hours in an eight hour day. (AR 25.)[4]

3          Although Plaintiff does not make the argument here, the court notes that the ALJ gave

4    specific, legitimate reasons for rejecting Dr. Corson's opinion on the two-hour standing

5    limitation, finding it to be inconsistent with clinical examination findings, including full grip

6    strength, a normal gait, full upper extremity strength and a normal sensory examination. (AR 25.)

7          The ALJ then discussed the findings of the State agency medical consultant. (AR 26.)

8    Notably, that consultant assessed Plaintiff as being able to stand/walk for six hours in an eight

9    hour day, indicating that the opinion of Dr. Corson limiting Plaintiff further was not consistent

10   with previous findings or imaging studies. (AR 76-78.) Both Dr. Corson and the consulting

11   physician opined Plaintiff could occasionally lift or carry up to twenty pounds and frequently lift

12   or carry ten pounds, which is consistent with the light work RFC assigned to Plaintiff by the

13   ALJ. (*See* AR 24, 77-78, 405.)

14         Even if the court credited Dr. Mars' assessment that Plaintiff was restricted to sedentary

15   work following his surgery in 2003 and inability to walk more than 200 feet, the court can

16   confidently say that the ALJ cited specific and legitimate reasons for finding Plaintiff was not

17   limited to sedentary work in the face of Dr. Corson's opinion regarding Plaintiff's ability to

18   sit/stand; therefore, the ALJ would not have reached a different disability determination in light

19   of Dr. Mars' assessments. As a result, the court finds the ALJ's failure to mention Dr. Mars'

20   assessments is harmless.

21   ///

22   ///

23   ///

24

25

26   _____

27         [4] A sedentary job "is defined as one which involves sitting," but "a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a). Light work, on the other hand, involves

28   jobs that require "a good deal of walking or standing, or ... sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § § 404.1567(b), 416.967(b).

**E. Did the ALJ Improperly Base her Non-Disability Determination on Plaintiff's Failure to Obtain Appropriate Treatment Without Taking Into Account his Inability to Pay for Treatment and Lack of Insurance?**

Finally, Plaintiff argues that the ALJ's nondisability finding was based in significant part on her finding that Plaintiff failed to obtain appropriate medical treatment in violation of agency policy set forth in Social Security Ruling 82-59. (Doc. # 14-1 at 20-22.) Plaintiff contends that the ALJ should have taken into account that Plaintiff was no longer seeking medical attention because he did not have insurance and was unable to pay for medical services. (*Id*.)

First, the court disagrees with Plaintiff's characterization of the ALJ's findings. The ALJ did not base her nondisability finding on Plaintiff's failure to obtain appropriate medical treatment. Yes, the ALJ mentioned that there was limited objective medical evidence in the record, and that is true, but the ALJ did not base her nondisability determination in significant part on the fact that there was limited evidence. The ALJ also commented that Plaintiff only treated for low back pain once after his alleged onset date. (AR 25.) The alleged onset date was October 2010. Plaintiff's back surgery took place in 2003. The fact that he only treated once after the alleged onset date is therefore relevant to the RFC analysis. The ALJ did not state or even imply that Plaintiff failed to obtain appropriate treatment; to the extent the ALJ mentioned that there was scant objective medical evidence or that Plaintiff's treatment was limited, this was just one factor among many cited by the ALJ in her nondisability determination.

Importantly, Plaintiff improperly conflates the ALJ's mention of the fact that there is limited objective evidence in the record with a determination that Plaintiff failed to obtain appropriate medical treatment. The later situation is governed by SSR 82-59, not the former. SSR 82-59 discusses how the agency may determine that an individual has failed to follow prescribed treatment and instructs the agency to determine whether or not the failure to follow prescribed treatment was justified. Here, the ALJ did not make any finding that Plaintiff failed to follow prescribed treatment. Therefore, SSR 82-59 is inapplicable.

The ALJ cited many factors for determining Plaintiff was not disabled including that the objective medical evidence did not support his testimony of disabling limitations. This evidence

1   included treatment records, State agency examinations and consultative reports, and objective

2   diagnostic imaging studies. In addition, the ALJ cited Plaintiff's wide range of reported activities

3   from his testimony and function reports, ability to work after his alleged onset date, and the

4   conservative treatment modalities used to treat his back and shoulder pain. (AR 26.) The

5   determination is supported by substantial evidence in the record.

6          Therefore, Plaintiff's motion should not be granted based on this final argument.

7                                   **IV. CONCLUSION**

8          After carefully reviewing the record as a whole, the court finds that: (1) the ALJ did not

9   err in not finding Plaintiff's mental impairments severe at step two; (2) the ALJ's error in failing

10  to mention Dr. Mars' assessments of Plaintiff in 2003 and 2004 is harmless; and (3) the ALJ did

11  not inappropriately base her nondisability finding on a failure by Plaintiff to obtain appropriate

12  medical treatment without considering his inability to pay and lack of insurance.

13                                 **V. RECOMMENDATION**

14         **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Remand/Reversal

15  (Docs. # 14/#14-1) be **DENIED**;

16         **IT IS HEREBY FURTHER RECOMMENDED** that the Commissioner's Cross-

17  Motion to Affirm (Doc. # 15) be **GRANTED** and that the decision of the ALJ be **AFFIRMED**.

18         The parties should be aware of the following:

19         1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local

20  Rules of Practice, specific written objections to this Report and Recommendation within fourteen

21  days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and

22  Recommendation" and should be accompanied by points and authorities for consideration by the

23  District Court.

24         2. That this Report and Recommendation is not an appealable order and that any notice of

25  appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

26  until entry of the District Court's judgment.

27  DATED: July 27, 2015

28                                          _____
                                            WILLIAM G. COBB
                                            UNITED STATES MAGISTRATE JUDGE